### John POLIS, Petitioner

v.

### WORKERS' COMPENSATION APPEAL BOARD (VERIZON PENNSYLVANIA, INC.), Respondent.

### Verizon Pennsylvania, Inc., Petitioner

v.

### Workers' Compensation Appeal Board (Polis), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 8, 2010.
Decided Feb. 5, 2010.

Zachary M. Rubinich, Philadelphia, for designated petitioner, Verizon Pennsylvania, Inc.

Jerry M. Lehocky, Philadelphia, for respondent, John Polis.

BEFORE: PELLEGRINI, Judge, BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Verizon Pennsylvania, Inc. (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting the reinstatement petition of John Polis (Claimant) because he proved that he was entitled to

temporary total disability benefits after his job was eliminated. Claimant has filed a cross-appeal arguing that the Board's decision regarding the dates it granted the reinstatement of benefits was erroneous.

Claimant injured his left knee on December 18, 2003, while in the course of his employment with Employer as a switchman. That position required constant lateral climbing and kneeling. He worked at modified-duty and eventually was transferred by his supervisor to a light-duty position because he could no longer perform his job. Claimant had knee surgery on April 1, 2005, and was released to return to work with some restrictions on climbing and kneeling. In September 2006, Employer informed Claimant that his light-duty job was being eliminated and offered claimant an Enhanced Income Security Plan (EISP) pursuant to his collective bargaining agreement. Because no other job was offered to Claimant, he elected to take the EISP.

On October 30, 2007, Claimant filed a reinstatement petition alleging a worsening of his condition as of September 15, 2006, and that his work injury caused him lost wages because he was laid off while working his modified-duty job. A hearing was held before a WCJ. Claimant's testimony was presented by deposition and no fact witnesses for Employer were presented for rebuttal.

Claimant testified that he was 64 years old as of the date of his testimony on April 9, 2008. He worked for Employer for 40 years full-time having been hired in 1963, which was Bell of Pennsylvania at the time. He explained about his injury and having to work on light-duty and that he continued working in 2006 after having surgery on his knee. Claimant stated that he did not decide to retire from his job with Employer but instead that his light-duty job was eliminated in September 2006. He said he was offered the EISP which was a contractual obligation they had when they eliminated a job and which was offered to someone in a working group when there was a "force of adjustment to the workplace" pursuant to the collective bargaining agreement. Claimant specified that because no job was offered to him that he was capable of performing within his restrictions and he had no other options, he had to sign the EISP form. He also stated that the EISP plan was offered to individuals starting August 9, 2006, and that it had to be accepted by September 7, 2006. Claimant stated that he had not returned to work for any employer since December 2007, but that he had been actively searching for employment. However, Verizon was the only employer that employed people in his type of work. He had looked on the internet for positions, but had not spoken with any prospective employers about available jobs. He also did not consider himself retired and if the job he was performing in September 2006 had not been eliminated, he would still be working there because it was a great job. Claimant admitted that he received unemployment benefits after leaving Employer from October 7, 2006, through March 31, 2007, with a gross benefit of $485 per week increased to $497 in January 2007.[1]

Claimant offered into evidence the EISP form, which indicated that he received a payment of $66,000 and an expense allowance of $3,750, and a voluntary termination bonus of $10,000. The form indicated that Claimant elected to take monthly pay-

---

1. Claimant affirmed that he completed a Bureau form entitled Employee's Report of Benefits LIBC Form 760 on December 4, 2007, indicating unemployment compensation gross $994 bi-weekly. He also indicated severance benefits of $1,375 per month beginning October 20, 2006, through September 20, 2010.

ments up to four years or 48 monthly payments of $1,375 gross per month. The form also indicated that his last day of work was September 15, 2006, with the checkmark in the "type of separation" box as retirement. He also offered his separation worksheet forms and exit interview forms completed by his supervisor Brian Egolf indicating that he retired from employment rather than his position was eliminated or that there was an involuntary separation.

■ The WCJ found Claimant to be credible, persuasive and unrebutted and determined that he was forced from his employment because Employer eliminated his job, which at the time, was modified-duty.[2] He also found Claimant's testimony credible that Claimant's supervisor, rather than Claimant, filled out the forms that indicated Claimant was retiring rather than involuntarily separating from employment or having his position eliminated. The WCJ noted that Employer did not provide any rebuttal testimony from Employer witnesses, including Claimant's supervisor. The WCJ relied on the EISP documents as well as the fact that Claimant applied for and received unemployment compensation benefits, he did not consider himself retired, and he was actively seeking employment, albeit unsuccessfully. The WCJ then ordered Employer to reinstate Claimant's temporary total disability compensation from September 16, 2010, the date which his 48 monthly payments of $1,375 benefits ends and ongoing into the future, until his disability changes within the meaning of the Workers' Compensation Act (Act).[3] The WCJ also ordered that Employer was entitled to a credit for unemployment compensation that was paid to claimant for 26 weeks beginning October 7, 2006, through March 21, 2007, at the rate of $85 per week from October 7, 2006, through January 7, 2007, and $497 per week from January 7, 2007, through March 21, 2007.

Both Employer and Claimant appealed to the Board. Employer argued that the WCJ should have granted a suspension of benefits pursuant to *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 948 A.2d 907 (Pa. Cmwlth.2008). The Board disagreed, explaining that case was not relevant because the defendant in that case presented vocational testimony regarding earning power assessment and vacancies in the labor market for which the claimant was capable and qualified to perform and the claimant was receiving a disability pension.

■ Claimant argued that the WCJ erred in awarding the reinstatement from September 16, 2010, instead of from September 15, 2006. The Board pointed out that because Claimant was receiving $1,375 per month for four years, the WCJ found that four years from the date Claimant was laid off would be September 16, 2010. "Were Claimant to receive compensation benefits in conjunction with the monthly severance benefits, the amount would exceed the maximum compensation rate." (Board's July 16, 2006 decision at 5.) This appeal by Employer challenging the eventual reinstatement of benefits and cross-appeal by Claimant challenging the credit given for EISP severance followed. Both appeals have been consolidated for

---

2. The WCJ is the ultimate determiner of credibility in workers' compensation cases. *Rissi v. Workers' Compensation Appeal Board (Tony DePaul & Son)*, 808 A.2d 274 (Pa.Cmwlth. 2002).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626.

our review.[4]

■ Addressing Employer's appeal first, it again argues that *Hensal* controls. In *Hensal,* the claimant suffered a work-related injury, and despite being offered work by his employer within his medical restrictions, refused to return to work and applied for a disability pension. The employer filed a petition to suspend the claimant's benefits arguing that because he retired, he had voluntarily withdrawn from the workforce. Because the WCJ had determined that the claimant had not voluntarily removed himself from the workforce as he had sought employment at various positions only two weeks before the WCJ's hearing and, therefore, he had only "temporarily" retired, the issue on appeal was whether the claimant had, in fact, voluntarily removed himself from the workforce because he had admitted that he had not actually sought any work.

This Court held that to establish a claimant's earning power, the employer had to first demonstrate that suitable employment was made available to the claimant. However, the employer was not required to offer suitable alternative employment when the claimant had voluntarily left the workforce having no intention of working. We held that where a claimant had accepted a pension, the claimant was presumed to have voluntarily left the workforce entitling the employer to a suspension of benefits unless the claimant established that 1) he was seeking employment or 2) the work-related injury forced him to retire. *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board (Henderson),* 543 Pa. 74, 669 A.2d 911 (1995).

*Hensal,* however, does not apply to this case for several reasons: the claimant in that case chose to leave the workplace even after being told that work was available within his medical restrictions, and he chose to apply for a disability pension. In this case, Claimant was forced to leave the workplace when Employer told him that his job was being eliminated and no other work was available within his medical restrictions. Claimant also did not receive a pension but a collective bargaining Enhanced Income Security Plan for being forced out of his job. The EISP form that was submitted into evidence stated: "This is to inform you that your job is in a work group that is *subject to a force adjustment.*" (Emphasis added.) Nowhere in that document is the payout characterized as a pension and it never mentions the word "disability" in order to receive payment. The EISP is strictly for employees who accept a buy-out when work is unavailable. Essentially, it is consideration for the termination of their employment. Finally, given that the WCJ found that Claimant's supervisor filed the forms indicating that Claimant was retiring, not Claimant, there is no evidence that he had intended to retire.[5] Because *Hensal* does

**4.** Our scope of review of the Board's decision is limited to determining whether constitutional rights have been violated, whether an error of law was committed, or whether findings of fact are supported by substantial evidence. *Morella v. Workers' Compensation Appeal Board (Mayfield Foundry, Inc.),* 935 A.2d 598 (Pa.Cmwlth.2007).

**5.** Similarly, *Mason v. Workers' Compensation Appeal Board (Joy Mining Machinery and AIG Claim Services),* 944 A.2d 827 (Pa.Cmwlth.

2008), has no application to this matter. *Mason* involved an injured claimant who, after two knee replacement surgeries, was released to perform medium-duty work but his employer decided not to reinstate him or offer him other positions because he could not perform his medium-duty job. The claimant filed for a disability pension, which was granted. While still employed by his employer, the claimant met with a vocational rehabilitation counsel to discuss job openings

not apply as Claimant was forced out of his employment and he did not receive a pension, Claimant was not required to prove that he sought employment.

■ More apropos is *Vista International Hotel v. Workers' Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (2000), where our Supreme Court, citing *Weber v. Workmen's Compensation Appeal Board (Shenango, Inc.)*, 729 A.2d 1249, 1252 (Pa.Cmwlth.1999), stated that:

> [W]e have held that when a claimant returns to work under a suspension with restrictions attributable to a work-related injury (that is, the claimant returns to a modified position rather than his time of injury position), is subsequently laid off and then petitions for the reinstatement of benefits, the claimant is entitled to the presumption that his loss of earning power is causally related to the continuing work injury.

Because Claimant was on modified-duty at the time his job was eliminated, his reinstatement petition was properly granted.

■ As for Claimant's appeal, he argues that the WCJ miscalculated his benefits under the reinstatement petition because the WCJ only granted total ongoing workers' compensation benefits to begin on September 16, 2010, which is the day his severance benefits will end. Instead, Claimant argues that while Employer is entitled to credits for the unemployment compensation benefits and the severance pay he was awarded, those credits do not completely preclude workers' compensation benefits being paid to him, and he is entitled to workers' compensation benefits from September 15, 2006, to September 20, 2010.[6]

In *Kelly v. Workers' Compensation Appeal Board (U.S. Airways Group, Inc.)*, 935 A.2d 68 (Pa.Cmwlth.2007), we stated that when "severance benefits" were paid to an employee who was separated from employment for any reason, under Section 204(a) of the Act, 77 P.S. § 71(a), "the severance benefits paid by the employer directly liable for the payment of compensation ... which are received by an em-

---

available to him within his work restrictions. The claimant was referred to seven different jobs. After leaving his position with the employer and remaining unemployed eight months later, the employer filed a petition to suspend benefits alleging that the claimant had elected to remove himself from the workforce.

Claimant filed an answer denying that work was available to him within his physical restrictions. The question became whether he had retired from the workforce by failing to follow through with the job referrals in good faith or whether he had been refused to return to work for the employer. On appeal, citing *Henderson*, we determined that because the claimant had accepted a pension, he had to prove that he was seeking employment or that his work-related injury forced him to retire. Because his injury did not force him to retire, the claimant had to prove that he was seeking employment, and we remanded the matter for further findings on that issue.

**6.** Claimant contends that he is entitled to the following benefits:

- Total workers' compensation benefits from September 15, 2006, through October 7, 2006;
- Partial workers' compensation benefits from October 8, 2006, through October 20, 2006 (with credit for the net unemployment compensation weekly benefits of $447 that he received during that time);
- No workers' compensation benefits from October 21, 2006, through March 21, 2007 (his combined severance and unemployment benefits are higher than his workers' compensation rate);
- Partial monthly workers' compensation benefits from March 22, 2007, through September 20, 2010 in the amount of $1,558.22 (his monthly compensation rate of $2,700—1,141.78, his net monthly severance pay = $1,558.22);
- From September 21, 2010, and ongoing he is entitled to total workers' compensation benefits of $2,700 per month.

ploye shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under 306(c)."

In this case, the WCJ and the Board recognized that Claimant received "severance benefits," and if he were to also receive workers' compensation benefits during the same time period that he received those severance benefits, he would be receiving more compensation than he was entitled to under the Act. That is why they refused to award him benefits until September 16, 2010, the date on which his EISP benefits will end. Consequently, the Board did not miscalculate Claimant's benefits under the reinstatement petition.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 5th day of February, 2010, the order of the Workers' Compensation Appeal Board, dated July 16, 2009, at A08–2398, is affirmed.