**CITY OF PITTSBURGH and UPMC Benefit Management Services, Inc., Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MARI-NACK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 6, 2012.

Decided Feb. 7, 2012.

Michael B. Dodd, Pittsburgh, for petitioner.

Kenneth P. Marinack, pro se.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

The City of Pittsburgh (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying its petition to suspend the disability compensation of Kenneth Marinack (Claimant). In doing so, the Board reversed the decision of the Workers' Compensation Judge (WCJ) that Claimant had voluntarily withdrawn from the workforce, as evidenced by his application for a disability pension and lack of effort to find a job. The Board held that Claimant's application for a disability pension was irrelevant and that Employer, not Claimant, had the burden of proving that Claimant intended to withdraw from the workforce. We affirm.

On May 21, 2004, Claimant sustained a work injury while doing his job as a firefighter. Employer accepted liability and issued a Notice of Compensation Payable describing the work injury as a left shoulder rotator cuff tear; aggravation of lumbar disc disease; and a psychological adjustment disorder with anxiety and depressed mood. Employer paid Claimant total disability benefits.

On September 16, 2008, Claimant's treating physician, Dennis J. Phillips, M.D., informed Employer that Claimant could work full-time at light-duty work. Two days later, Employer sent Claimant an LIBC Form 757, Notice of Ability to Return to Work.[1] On September 24, 2008,

---

1. An employer is required by Section     306(b)(3) of the Workers' Compensation Act,

Employer filed a petition seeking to suspend disability compensation as of September 16, 2008, not because Claimant was capable of working but because Claimant had removed himself from the workforce. Claimant filed an answer denying the allegations.[2] The matter was assigned to a WCJ who held a series of evidentiary hearings.

Employer submitted the medical deposition of Dr. Phillips, a board certified orthopedic surgeon who has been treating Claimant for the work injury to his shoulder since October 2004. Dr. Phillips opined that Claimant's work injury rendered him incapable of doing the heavy work of a firefighter. In April 2005, Dr. Phillips sent Employer a report stating that Claimant could do sedentary work. On September 16, 2008, Dr. Phillips released Claimant to perform light-duty work, lifting up to twenty pounds.

However, Dr. Phillips' deposition also showed that Claimant did not continue to be able to work after September 16, 2008. Because of Claimant's increasing shoulder pain, Dr. Phillips limited Claimant to sedentary work as of October 28, 2008. On March 25, 2009, Dr. Phillips did more surgery to Claimant's shoulder, which left him totally disabled. As of May 1, 2009, when he was deposed, Dr. Phillips had not yet released Claimant to do any type of work.

Dr. Phillips could not recall that at any time during his years of treating Claimant that Claimant had asked for assistance in working with the Office of Vocational Rehabilitation (OVR) to return to work.

Employer also presented the deposition testimony of Barbara E. Swan, M.D., who is board certified in physical medicine and rehabilitation. Dr. Swan has treated Claimant's work-related back injury since July 28, 2005. In September 2005, Dr. Swan informed Claimant that he would not be able to return to work as a firefighter. On October 14, 2008, following a physical examination, Dr. Swan released Claimant to do medium-duty work, at least with respect to his back. Dr. Swan testified that Claimant has never asked her to help return him to the workplace or to identify what job restrictions should be placed on him.

Claimant testified in opposition to Employer's petition, both by deposition and by live testimony. He presented no medical evidence or testimony.

Claimant testified that he has experienced both back and shoulder pain since his 2004 work injury and has never returned to work. Claimant testified that he

---

Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 512(3), to supply the claimant with a Notice of Ability to Return to Work. Section 306(b)(3) states:

> If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:
> (i) The nature of the employe's physical condition or change of condition.
> (ii) That the employe has an obligation to look for available employment.
> (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
> (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

77 P.S. § 512(3).

2. Employer also filed a termination petition with respect to the psychological injury, which the WCJ granted after finding Claimant had fully recovered from that injury as of October 23, 2007. Claimant filed a penalty petition because Employer refused to pay for his gym membership, but the WCJ denied it. These petitions are not at issue on appeal and, thus, the opinion does not consider the hearing evidence pertaining to these petitions.

applied for a disability pension after being injured, but it was denied because Employer fired him in April 2005. Claimant explained that an elderly couple for whom he was doing construction work complained to Employer about the quality of his work. Employer investigated and referred the matter to the City's fire trial board, which found that Claimant had acted unethically. On that basis, Employer discharged Claimant.

Employer's documentary evidence explained that Claimant was discharged because he did not inform Employer that he was earning wages in construction while he was collecting disability compensation and benefits under what is commonly known as the Heart and Lung Act.[3] Claimant's firing rendered him ineligible for a pension, disability or retirement. However, Claimant has continued to receive workers' compensation disability and Heart and Lung Act benefits since his discharge.

Claimant testified that he considers himself to be disabled, but he denied that he has withdrawn from the workforce. To the contrary, he testified that he began working with a vocational counselor from OVR sometime in 2006 and met with him three times, most recently in September 2007. Because his physical limitations were substantial, Claimant testified that he is not sure what type of work, if any, he is able to do.

Claimant acknowledged receiving Employer's Notice of Ability to Return to Work based on Dr. Phillips' release to light-duty work in September 2008 as well as the second Notice based on Dr. Swan's release to medium-duty work in October 2008. Claimant testified that after receiving the Notices, he interviewed for two jobs. One interview was with his aunt and the other was with a high school friend. Claimant looks at the want ads for jobs, but he stated that given his uncertain physical capabilities, it would not be fair to potential employers to accept a job. On March 16, 2009, Claimant testified that he planned to go to OVR again to seek employment training after his scheduled March 25, 2009, shoulder surgery, at which point he would learn the full extent of his capabilities.

■ The WCJ credited the testimony of Dr. Phillips and Dr. Swan and on their testimony found that Claimant was capable of modified-duty work "at all relevant times." WCJ Decision at 12; Finding of Fact 40.[4] The WCJ also found that Claimant never asked his doctors about what, if any, work restrictions applied to him and did not seek their help with the OVR. The WCJ rejected Claimant's testimony that he did not withdraw from the workforce as not credible. The WCJ found that Claimant's efforts to find work were questionable, noting that interviewing for a job with a family member and a childhood friend did not amount to a good faith effort to find work.

Based on these findings, the WCJ concluded that Claimant had withdrawn from the workforce. Specifically, the WCJ found that Employer "obtained informa-

---

3. Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638. The Heart and Lung Act provides firemen injured on the job their full salary. They receive these benefits concurrent with their workers' compensation disability benefits. According to Claimant, Employer attempted to stop paying him Heart and Lung Act benefits after he was fired, but a city arbitrator did not allow it.

4. The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth.1995).

tion that the claimant was capable of some level of work, and that the claimant *had retired* from the time of injury employer." WCJ Decision at 15; Conclusion of Law 10(c) (emphasis added). The WCJ reasoned that the burden then shifted to Claimant to show that he had been forced out of the workforce by his work injury or that he was searching for work in good faith; Claimant failed to meet that burden. The WCJ suspended Claimant's workers' compensation benefits effective September 16, 2008, the date of Dr. Phillips' first work release.

■ Claimant appealed, and the Board reversed. First, the Board held that the WCJ's finding that Claimant "had retired" was erroneous. Instead, the evidence showed that Employer fired Claimant, who was then rendered ineligible for any pension. Because Claimant was fired and not collecting a disability pension, the Board held that Claimant did not withdraw from the workforce. In reaching this conclusion, the Board relied upon *Polis v. Workers' Compensation Appeal Board (Verizon Pennsylvania, Inc.)*, 988 A.2d 807 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 606 Pa. 690, 997 A.2d 1180 (2010). Absent evidence that Claimant had withdrawn from the workforce, the Board held that it was Employer's burden to prove that Claimant had earning capacity, which it could do by introducing evidence of a job referral or a labor market survey. Because Employer did not do so, the Board

denied it a suspension. Employer then petitioned for this Court's review.[5]

Employer argues that the Board erred. First, Employer asserts that its discharge of Claimant, which rendered him ineligible for a pension, did not preclude a determination that Claimant intended to withdraw from the workforce. It contends that the Board misconstrued *Polis* to mean that a claimant must be collecting a pension before the employer can treat the claimant as having withdrawn from the workforce. Second, Employer argues that whether a claimant has withdrawn from the workforce is determined by the totality of the circumstances. Here, Employer argues, those circumstances show that Claimant intended to remove himself from the workforce because he has done nothing meaningful to look for work.

■ To suspend a claimant's disability compensation where the claimant is collecting a disability pension, the employer must establish job availability, either by job referrals or by a labor market survey. *City of Pittsburgh and UPMC Benefit Management Services, Inc. v. Workers' Compensation Appeal Board (Robinson)*, 4 A.3d 1130, 1134 (Pa.Cmwlth.2010), (plurality op.), *appeal granted*, 610 Pa. 1, 17 A.3d 917 (2011).[6] In *Robinson*, a plurality of this Court held that an employer must aid an injured employee in returning to the workforce by identifying the claimant's medical capabilities and available employ-

5. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

6. Our Supreme Court has granted *allocator* in *Robinson*, limited to the following issue:

Did the Commonwealth Court err by holding that, in a petition to suspend compensation benefits based upon an alleged voluntary withdrawal from the workforce, the employer bears the burden of showing by the totality of the circumstances that the claimant has chosen not to return to the workforce?

*Robinson*, 610 Pa. 1, 1, 17 A.3d 917, 917–918 (2011).

ment opportunities. However, the employer is relieved of this burden where "it is clear from *the totality of the circumstances* that such efforts would be unavailing" because the claimant has withdrawn from the workforce. *Robinson,* 4 A.3d at 1138 (emphasis added). The employer bears the burden of proving that the claimant has withdrawn from the workforce, explaining as follows:

> Circumstances that could support a holding that a claimant has [withdrawn from the workforce] include: (1) where there is no dispute that the claimant retired; (2) *the claimant's acceptance of a retirement pension;* or (3) the claimant's acceptance of a pension and refusal of suitable employment within [his] restrictions. To impose a lesser standard on an employer to show that a claimant has retired would not be consistent with the humanitarian purpose of the Act or our Supreme Court's precedent.

*Id.* (emphasis added).[7] In sum, there is no presumption that a claimant collecting a disability pension has withdrawn from the workforce; rather, it is the employer's burden to prove that the claimant on a disability pension intends not to return to work.

■ By contrast, where a claimant has accepted a retirement pension, for which he has become eligible by reason of age and years of service, there is a presumption that the claimant has withdrawn from the workforce. *Southeastern Pennsylvania Transportation Authority v. Work-*

men's Compensation Appeal Board *(Henderson),* 543 Pa. 74, 669 A.2d 911 (1995) (holding that a claimant collecting social security and a retirement pension must have his disability compensation suspended because he has voluntarily left the labor market). However, the retired claimant may defend against a suspension by producing evidence that he is looking for a job that falls within his physical limitations or that the work injury has rendered him incapable of doing any job.

In its first argument, Employer contends that the Board erroneously relied on *Polis.*[8] In *Polis,* the employer eliminated the claimant's light-duty job, and the claimant accepted a buy-out payment offered by the employer. The buyout had nothing to do with a pension or disability. The claimant then sought to reinstate total disability benefits, which the employer opposed on the grounds that the claimant had withdrawn from the workforce. This Court held that the claimant was entitled to a reinstatement of benefits because he did not intend to retire, as evidenced by the fact that he was forced out of his job and did not receive a pension. *Id.* at 811–812.

■ Employer argues that the Board erred by construing *Polis* to establish a universal rule that an employee who loses a job but is not awarded a pension cannot be found to have withdrawn from the workforce. Here, Claimant applied for a

---

7. *Robinson* is a plurality *en banc* opinion from this Court, which is not binding precedential authority. *Hackler v. Unemployment Compensation Board of Review,* 24 A.3d 1112, 1116 n. 4 (Pa.Cmwlth.2011). However, several opinions of this Court have followed *Robinson: Department of Public Welfare/Norristown State Hospital v. Workers' Compensation Appeal Board (Roberts),* 29 A.3d 403, 408 (Pa. Cmwlth.2011); *Keene v. Workers' Compensation Appeal Board (Ogden Corp.),* 21 A.3d 243,

246 (Pa.Cmwlth.2011); and *City of Pittsburgh v. Workers' Compensation Appeal Board (Leonard),* 18 A.3d 361, 365 (Pa.Cmwlth.2011). These cases following *Robinson* do constitute binding precedent, and likewise the majority follows *Robinson* here.

8. *Robinson* had been decided when the Board issued its adjudication reversing the WCJ, but the Board did not cite to or rely on *Robinson.*

disability pension and would be on one, except for his own misconduct. We agree with Employer that *Polis* did not establish the principle that a claimant must be receiving a pension before he can be considered to have withdrawn from the workforce. It is enough that the claimant applied for a pension.

This means that the totality of circumstances test announced in *Robinson* applies here.[9] Employer argues, in its second issue, that the totality of the circumstances demonstrates that Claimant did, in fact, withdraw from the workforce.

In support, Employer points to the following undisputed facts: (1) Employer did not eliminate Claimant's firefighter job; (2) Claimant did not show that he wanted to return to work with Employer; (3) Claimant applied for a disability pension; (4) Claimant did not advise Employer of the work he could do given his medical restrictions; (5) Claimant did not show that he made a sincere effort to work with OVR to return to the workplace; and (6) Claimant applied for two jobs only after Employer filed its suspension petition. Employer asserts that Claimant's firing is not relevant, noting that this event did not take place until after he applied for a disability pension. According to Employer, the evidentiary record, as summarized above, shows that Claimant had withdrawn from the workforce before he was fired. We disagree.

In *Robinson,* 4 A.3d at 1137, this Court held that where a claimant is receiving a disability pension, it is the employer's burden to prove the claimant's intent to withdraw from the workforce.[10] *Robinson* offered examples on how that intent could be proved, *i.e.,* the claimant does not dispute that he does not intend to work again, has accepted a *retirement* pension or has accepted a *disability* pension and has refused suitable work.

■ Employer believes that another example of intent to withdraw from the workforce was Claimant's failure to look for another job. However, this lack of effort on Claimant's part does not make Employer's "totality of circumstances" case. As this Court explained in *Keene v. Workers' Compensation Appeal Board (Ogden Corporation),* 21 A.3d 243, 246 (Pa. Cmwlth.2011), only after the employer proves the claimant's intent to withdraw from the workforce does the claimant's failure to look for work become relevant. We specifically held as follows:

> An employer cannot rely on a claimant's failure to seek work to prove a voluntary retirement from the workforce because *a claimant has no duty to seek work*

**9.** Employer fired Claimant for misconduct, but it is not seeking suspension on that basis. Instead, it has chosen to pursue a suspension based on his withdrawal from the workforce as evidenced by his application for a disability pension and his failure, thereafter, to look for work in a meaningful way.

**10.** The authoring judge dissented from *Robinson,* 4 A.3d at 1141–42, asserting that a claimant's pension, whether retirement or disability, should entitle the employer to a presumption that the employee has withdrawn from the workforce. The dissent's reasons were two-fold. First, the claimant has control of the evidence relevant to his "intentions" about future work. Second, a pension, whether disability or retirement, is optional with the claimant, who can, as the Claimant did here, simply return to workers' compensation or Heart and Lung benefits. A person on a disability pension does not graduate to a retirement pension at age 65; the disability is lifetime. Under *Robinson,* the employer will never be able to presume that a claimant on a disability pension has withdrawn from the workforce. Even when the claimant reaches age 95, it will be the employer's burden to assist the claimant in finding an appropriate job.

*until the employer meets its initial burden to show a voluntary [withdrawal from the workforce].* Until the employer proves a voluntary [withdrawal from the workforce], the employer has a duty to make job referrals to the claimant.

*Id.* at 246 (emphasis in original).

■ Employer's evidence did not prove that Claimant intended to withdraw from the workforce. Claimant denies any intention to withdraw from the workforce; in other words, Claimant's intent is not "undisputed." *Robinson,* 4 A.3d at 1134. *Robinson* gives examples of how an employer can prove an intent to withdraw from the workforce but otherwise does not provide guidance to make this case, and it is a difficult burden.[11] Nevertheless, it is clear under *Robinson* and *Keene* that a claimant's lack of effort to look for a job does not prove an intention to withdraw from the workforce. Accordingly, it was Employer's burden to show that it assisted Claimant in returning to the workforce, and it did not present such evidence. We are constrained by *Robinson* to hold that Employer did not make a case for suspension.[12]

For these reasons, the order of the Board is affirmed.

### ORDER

AND NOW, this 7th day of February, 2012, the order of the Workers' Compensation Appeal Board dated December 21, 2010, in the above captioned matter is hereby AFFIRMED.

---

**11.** In *Henderson,* our Supreme Court stated that "[a]n employer should not be required to show that a claimant has no intention of continuing to work; such a burden of proof would be prohibitive." 543 Pa. at 79, 669 A.2d at 913. Generally, the party in possession of the evidence is the party burdened with the obligation to come forward with that evidence.

**12.** It is undisputed that Claimant's medical restrictions changed several times since his work injury. The WCJ's finding that Claim-ant was capable of modified-duty work at all relevant times is not supported by the evidence. Employer sent Claimant a Notice of Ability to Return to Work in September 2008, but only with respect to his shoulder. Claimant was not released to work with respect to his work-related back injury until October 2008, but by then his shoulder restrictions had increased. Claimant was again totally disabled by his shoulder injury when he underwent another surgery in March 2009.