**Thomas SHARKEY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (FEDERAL EXPRESS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 24, 2001.
Decided Nov. 15, 2001.

Marilyn T. Jamain, Philadelphia, for petitioner.

Patricia A. Toland, Philadelphia, for respondent.

Before PELLEGRINI, Judge, FRIEDMAN, Judge, FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Thomas Sharkey (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a Workers' Compensation Judge (WCJ) granting in part and denying in part Claimant's Claim Petition. We affirm.

Claimant worked as a package courier with Federal Express (Employer). On January 3, 1997, while in the process of unloading Employer's truck, Claimant suffered tightness in his chest, shortness of breath and sweating. Claimant drove himself to the emergency room and was admitted to a hospital for three days. He did not return to his pre-injury duties thereafter. Three months later, Claimant filed a Claim Petition alleging he suffered a myocardial infarction as a result of excessive work effort and stress during the course of his employment.

In support of his claim, Claimant offered the testimony of Thomas Santilli, M.D. Dr. Santilli testified, based on medical records, that Claimant's previous symptoms were suggestive of angina. Claimant's prior treatment included a myocardial catheterization and angioplasty, which appeared to resolve his symptoms. Claimant also had documented coronary disease since October 1995. Claimant had been a patient of Dr. Santilli since May 1996 during which Dr. Santilli's primary treatment mode has been preventative measures including medications, monitoring and exercise. In August 1996, Claimant was hospitalized following an argument with his boss. Dr. Santilli opined that this incident was prob-

ably caused more by stress than an actual cardiac event. Another catheterization was performed which revealed mild to moderate coronary arterial blockage; however, it was determined that Claimant could be medically managed rather than undergo additional procedures. On a follow up visit in September 1996, Claimant exhibited no symptoms, his condition was stable and Dr. Santilli felt that Claimant could return to full work.

On January 3, 1997, Claimant developed tightness of chest, shortness of breath and diaphoresis while engaging in heavy activity at work. Claimant was hospitalized and a myocardial scan suggested that he had a mild heart defect. Dr. Santilli testified that the high exertion levels at work precipitated Claimant's symptoms. At the time of his discharge from the hospital, Claimant was advised that he should not go back to work. Dr. Santilli examined Claimant again on January 22, 1997. Dr. Santilli stated that Claimant was asymptomatic if he did not exert himself at very high levels of work. Claimant was advised that he should seek another job because he could not return to the same job with the same exertional requirements. On February 27, 1997, Claimant was re-examined, found to be asymptomatic and advised not to return to work. Another examination on July 1, 1997 also found Claimant to be asymptomatic.

Dr. Santilli testified that Claimant's condition on January 3, 1997 was different from his previous hospitalization. This event caused a subendocardial infarction, an extremely small area of muscle damage in the heart. The exertion levels at work directly precipitated this condition. Moreover, there is a likelihood that such a high level of exertion would trigger another cardiac event with the possibility of damage to a larger area of the heart or even death.

The damaged heart muscle, however, is not the source of Claimant's physical limitations. According to Dr. Santilli, Claimant lacks the "cardiac reserve" to perform at a high exertional level:

> His heart function, the contraction is good, it's the fact that he has mild to moderate blockage in the arteries, it's a supply and demand. If you have a certain amount of blockage to the artery, you could perform a certain level of activity because your heart could get flow. The strength of the contraction is excellent, the heart can beat as strong as possible. When it [the heart] was called upon to perform a task above and beyond normal, it [the heart] can't, there's only a certain amount of blood flow it [the heart] could get, then all of a sudden the demand outstrips the supply, it [the heart] can't get it [blood].

Testimony of Dr. Santilli; R.R. at 375a. Prior to Claimant's January 1997 hospitalization, his pre-existing coronary disease did not restrict his activities. Dr. Santilli stated, that "for whatever reason", something occurred between August 1996 and January 1997 to reduce the amount of his cardiac reserve.

The testimony of Dr. Santilli was deemed to be competent, unequivocal and persuasive. The WCJ found the testimony of Robert Kleiman, M.D., Employer's medical expert, to be competent, unequivocal and persuasive only to the extent it concurs with Dr. Santilli's testimony.[1] The WCJ summarized the medical testimony to conclude that Claimant's work activities in January 1997 directly precipitated his chest pain and resulted in a small enzyme

---

1. Given this credibility determination and the issues raised in this appeal, Dr. Kleiman's testimony is not addressed.

leak and a very tiny subendocardial infarction. Given that Claimant suffered a very small amount of damage to his heart muscle, the WCJ awarded medical benefits after January 6, 1997. The WCJ concluded, however, that Claimant's inability to work was not related to the heart muscle damage but was solely related to his pre-existing, non-work-related blockage of the coronary arteries. In a lengthy opinion, the learned WCJ concisely and accurately synthesized our decisions in *Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Thomas)*, 725 A.2d 873 (Pa. Cmwlth.1999) and *Putz v. Workers' Compensation Appeal Board (Lupini Construction Co.)*, 727 A.2d 1192 (Pa.Cmwlth. 1999), to conclude that "in order for a Claimant to be entitled to continuing benefits after his symptoms have disappeared, he must demonstrate that the underlying condition was caused by his work and not merely show that his work aggravated a preexisting non-work-related condition." WCJ Opinion dated July 30, 1999, p.p. 44–45; R.R. A–53—A–54. The Board affirmed.

■ On appeal, Claimant raises two issues. The first issue is whether there is substantial evidence to support the WCJ's finding that Claimant's physical limitations were not related to the heart muscle damage. Claimant contends that his work activities in January 1997 resulted in a worsening of his condition and it is Claimant's worsened condition, which prevents his from return to his pre-injury job. Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152 (Pa.Cmwlth.1998). In performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party who prevailed before the factfinder. *Id.* Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party. *Id.* Furthermore, in a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Id.* It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Id.* As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* It is with these principles in mind that we consider this challenge.

■ In a claim petition proceeding, the claimant bears the burden of proving that he suffers from a work-related injury that occurred in the course and scope of his employment and that the injury results in a loss of earning power. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)* 535 Pa. 135, 634 A.2d 592 (1993). Given the state of the law and deference to the WCJ's findings, we conclude that the testimony of Dr. Santilli constitutes substantial evidence to support the WCJ's finding that it was Claimant's preexisting coronary disease, and not the heart damage precipitated by his job activities, which prevented Claimant from returning to his physically demanding job.

■■ The second issue is whether the WCJ erred as a matter of law by not considering the risk of further injury if Claimant returned to his pre-injury job. Pursuant to Section 301(c)(1) of the Work-

ers' Compensation Act (Act),[2] 77 P.S. § 411(1), included in the definition of "injury" is a work-related aggravation of a pre-existing non-work related injury or medical condition. *See also Armco, Inc. v. Workmen's Compensation Appeal Board (Mattern )*, 542 Pa. 364, 368–369, 667 A.2d 710, 712 (1995). However, this Court has previously held that an incident must materially contribute to a claimant's disability in order for that incident to be classified as an "aggravation." *See SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls )*, 728 A.2d 385, 387 (Pa.Cmwlth.1999). Also, a disability that results from the natural progression of a non-work-related pre-existing condition is not compensable under the Act. *See Vazquez v. Workmen's Compensation Appeal Board (Masonite Corporation )*, 687 A.2d 66, 70 (Pa.Cmwlth.1996) and *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass )*, 515 Pa. 315, 528 A.2d 580 (1987).

The Pennsylvania Supreme Court has stated that "[o]ur law of Workers' Compensation does not require an employee to bear the risk of probable severe and totally disabling reinjury by return to heavy work on pain of foregoing all compensation." *Farquhar*, 515 Pa. at 329, 528 A.2d at 587 (*quoting Jasper v. Workmen's Compensation Appeal Board (Teledyne Columbia/Summerrill)*, 498 Pa. 263, 266, 445 A.2d 1212, 1214 (1982)). In *Farquhar*, the claimant was able to seek total disability benefits on the basis that aggravation symptoms would most likely reappear upon the claimant's return to her former position. The *Farquhar* holding is applicable, however, only when there are residual work-related injuries that never resolve. *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Baxter)*, 550 Pa. 658, 664, 708 A.2d 801, 804 (1998).[3]

This Court has recently reaffirmed our holding in *Giant Eagle*. *See Locher v. Workers' Compensation Appeal Board (City of Johnstown)*, 782 A.2d 35 (Pa. Cmwlth.2001). In *Locher*, we held that an incident must *materially* contribute to a pre-existing injury or condition to be an aggravation. *Id.* (emphasis added). Although the WCJ did find that Claimant had suffered some heart damage, Dr. Santilli testified that the area damaged was "extremely small" and "he didn't have damage to his heart that is limiting." Accordingly, the damage that did occur to Claimant's heart muscle could have been considered immaterial.

Therefore, the WCJ did not err as a matter of law by not considering the risk of further injury because Claimant failed to demonstrate that his work-related injury materially contributed to his blocked arteries. The order of the Board is affirmed.

### ORDER

AND NOW, this 15th day of November, 2001 the order of the Workers' Compensation Appeal Board dated January 4, 2001

---

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2606.

**3.** The Court in *Baxter* also stated that:
It undermines the principles of the Act to impose liability on an employer for the existence of a condition present from childhood when no residual work-related injury is demonstrated. Baxter was properly paid worker's compensation benefits for the period of time he was disabled by conditions at his workplace, as those conditions exacerbated his pre-existing condition, but once he had fully recovered from that disability, he was ineligible for benefits.
*Baxter,* 550 Pa. at 664–65, 708 A.2d at 804.

regarding the claim petition of Thomas Sharkey is hereby affirmed.