IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Chamberlin,                             :
                              Petitioner        :
        v.                                      :     No. 61 C.D. 2022
                                                :     Submitted: August 26, 2022
Commonwealth of Pennsylvania                    :
(Workers' Compensation Appeal Board),           :
                              Respondent         :


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                           FILED: December 6, 2022


        Jeffrey Chamberlin (Claimant) petitions for review of the December 28, 2021

order of the Workers' Compensation Appeal Board (Board).  The Board affirmed

the order of the Workers' Compensation Judge (WCJ), granting the Commonwealth

of Pennsylvania's (Employer) petition to modify Claimant's benefit status from total

to partial disability and granting in part Claimant's review petitions by amending the

description of his work injury to include a right biceps tenodesis.  The order further

directed that Claimant would bear his own litigation costs.  After careful review, we

affirm.

## I. Background and Procedural History

        Claimant suffered an injury on February 10, 2015, while employed as a Youth

Development Counselor Supervisor at a juvenile detention facility.  He intervened

to stop a fight between two residents of the facility and, while "trying to secure" one of them, fell to the floor. Reproduced Record (R.R.) at 68-69, 514.[1] Employer issued a notice of compensation payable (NCP) on April 23, 2015, which acknowledged Claimant suffered a work-related right shoulder labrum tear and rotator cuff tear.

On March 21, 2019, Employer filed a petition seeking to modify Claimant's benefits status from total to partial disability. Employer relied on an impairment rating evaluation (IRE) by Maciej T. Charczuk, M.D. (Charczuk), which indicated Claimant had a whole-person impairment of 4%. Claimant filed an answer denying the allegations in Employer's petition. On June 25, 2019, Claimant filed a review petition, seeking to amend the description of his work injury to include additional diagnoses.[2] Employer filed an answer denying the allegations in Claimant's review petition.

The WCJ held a hearing on August 28, 2019, during which Claimant testified. Employer submitted the September 25, 2019 deposition of Charczuk and the June 8, 2020 deposition of David C. Baker, M.D. (Baker), who performed an independent medical examination of Claimant. Further, Claimant submitted the November 12, 2020 deposition of Matthew W. Reish, M.D. (Reish), an orthopedic surgeon who treated his conditions. While this proceeding remained ongoing, on July 15, 2020, Claimant filed a second review petition. He again sought to amend the description

---

[1] Claimant failed to include a lowercase "a" following the page numbers in his reproduced record, in violation of our Rules of Appellate Procedure. *See* Pa.R.A.P. 2173.

[2] The additional diagnoses included: "impingement; supraspinatus tear; biceps tendon synovitis; intra-articular synovitis; subdeltoid scarring; adhesions; cervical spondylosis and disc bulges and/or aggravation/exacerbation of the same; right brachial plexopathy; right axillary nerve neurapraxia; right carpal tunnel syndrome; [and] dropped biceps." R.R. at 14.

2

of his work injury with additional diagnoses.[3] Employer filed an answer denying the allegations in this review petition as well.

## A. Claimant's Testimony

Relevantly, Claimant testified regarding the circumstances of his work injury and ongoing symptoms that he believed resulted from the injury. Claimant testified he continued to suffer pain in his right shoulder, pectoralis muscle, ribcage, and arm, which was most severe above his right shoulder blade, occurred about once a week, and depended on his activity level. *Id.* at 82-84. He testified he experienced tingling and numbness in his right hand, which similarly occurred about once a week and depended on his activity level. *Id.* at 84-85. Claimant acknowledged he had a history of pain and stiffness in his neck for which he had received treatment before his 2015 work injury. *Id.* at 85. This resulted from a separate incident in approximately 2014, when he "was kicked and punched in the head" at the juvenile detention facility. *Id.* at 90.

## B. Charczuk's Deposition

Charczuk's deposition centered on the IRE of Claimant he performed and his conclusion that Claimant had a whole-person impairment of 4%. Charczuk opined Claimant was at maximum medical improvement at the time of the IRE on February 13, 2019. *Id.* at 120, 145-46. In addition, he summarized the testing he conducted, describing the range of motion in Claimant's right shoulder as "grossly functional with some limitations" and "basically normal." *Id.* at 141-42, 182. Charczuk noted:

---

[3] The additional diagnoses in Claimant's second review petition included: "Parsonage-Turner [syndrome], brachial neuritis, neuralgic amyotrophy and/or aggravation/exacerbation of the same, paresthesia, numbness and tingling of the right shoulder, upper extremity, hand and fingers, cervical [degenerative joint disease] and/or aggravation/exacerbation of the same, cervical disc herniation(s) and/or aggravation/exacerbation of the same, and intra-articular synovitis." R.R. at 22.

"I can say that, frankly, I haven't seen many people suffering rotator cuff injury that recovered as well as [Claimant] did. Kudos to [the] people that were taking care [of] him." *Id.* at 173. He described at length his process for determining a whole-person impairment rating for Claimant, applying the Sixth Edition of the American Medical Association *Guides to the Evaluation of Permanent Impairment*, second printing, April 2009. R.R. at 146-54.

## C. Baker's Deposition

Baker discussed his independent medical examination of Claimant on July 12, 2019. Notably, Baker addressed a cervical condition Claimant alleged was related to his work injury, explaining that Claimant underwent magnetic resonance imaging (MRI) of his cervical spine in 2014 and 2017. *Id.* at 227. He explained the 2014 MRI report indicated "a diffuse disc bulging with degenerative changes greater at C6-7, with the central protrusion at C6-7 and . . . uncovertebral osteophyte formation . . . . That refers to the joints being enlarged." *Id.* at 228-29. In contrast, Baker continued, the 2017 MRI report "did not report a protrusion of C6-7. It reports degenerative changes. And it reports . . . facet joint hypertrophy." *Id.* at 229. Baker concluded this condition did not result from the 2015 work injury, reasoning, among other things, that the 2014 MRI taken before the injury was not significantly different from the 2017 MRI taken after the injury. *Id.* at 229, 248-49.

In addition, Baker addressed Claimant's Parsonage-Turner syndrome.[4] Baker explained Claimant underwent electromyography (EMG) in March and September 2017. *Id.* at 231. Claimant's first EMG revealed "upper trunk incomplete brachial

---

[4] Baker described Parsonage-Turner syndrome as "a type of brachial plexopathy," and a "variably temporary dysfunction" of the brachial plexus, which "is a network of nerves. They're the . . . nerve roots that come out of the cervical spine and are joined together and give branches, then go on down . . . the arm . . . ." R.R. at 232-33, 236.

4

plexopathy and right axillary nerve neuropraxia." *Id.* The second EMG indicated Claimant's condition had resolved, and "there was no brachial plexopathy or cervical radiculopathy at that time." *Id.* at 232, 236. Baker did not believe this issue related to Claimant's work injury, reasoning that "we don't understand where Parsonage[-]Turner comes from," and that it often "comes out of the blue" without a traumatic event to precipitate it. *Id.* at 235-36, 252, 268-69, 281.

Regarding Claimant's other diagnoses, Baker opined Claimant's right labrum was not involved in his work injury. *Id.* at 250-52. He emphasized, without detailed explanation, that Claimant initially complained about shoulder pain after his injury. *Id.* Baker also discussed impingement, as well as subdeltoid scarring and adhesions, which he characterized as "part and parcel of [Claimant] having the rotator cuff tear and previous surgery."[5] *Id.* at 285. Baker acknowledged Claimant underwent a biceps tenodesis procedure[6] at the time of his rotator cuff repair surgery, however, and he considered this causally related to the work injury. *Id.* at 224, 282-83.

---

[5] Baker explained Claimant's impingement referred "to a loss of available space, [the] rotator cuff is impinged on the acromion. That's an anatomic issue." R.R. at 256-57. He described it as part of a "spectrum" of rotator cuff disease and clarified that "[s]eparating out impingement and rotator cuff tears is not really possible." *Id.* at 258-60. Baker explained Claimant's subdeltoid scarring and adhesions simply referred to "scarring that developed in that area" due to surgery. *Id.* at 262-63.

Baker further discussed biceps tendon synovitis and intra-articular synovitis. Although not explained at Baker's deposition, "synovitis" describes "inflammation of a synovial membrane." Merriam Webster's Collegiate Dictionary 1197 (10th ed. 1997). Addressing Claimant's biceps tendon synovitis, Baker explained: "I think it's indirectly related to the injury and that he had a rotator cuff tear and then . . . and synovitis of the biceps and it can accompany that." R.R. at 262. Baker described Claimant's intra-articular synovitis as "a phenomena of the rotator cuff repair." *Id.*

[6] Reish, whose deposition we summarize below, defined biceps tenodesis as "a procedure where the biceps tendon is reattached in a different location due to some sort of pathology with it." R.R. at 349.

**D. Reish's Deposition**

Reish's deposition involved the treatment he provided for Claimant's cervical, nerve, and shoulder problems. Reish first treated Claimant for cervical problems in January 2014, before the 2015 work injury. *Id.* at 323, 383. When asked if he could opine to a reasonable degree of medical certainty whether Claimant's work injury "caused or contributed to any symptoms coming from the neck," Reish replied that he would defer to Matthew Eager, M.D., an orthopedic surgeon and spine specialist at the same office as Reish, who had treated Claimant. *Id.* at 351, 376. Nonetheless, Reish stated: "I certainly think . . . it was a contributing factor to [his] symptoms overall." *Id.* at 376; *see also id.* at 385 ("He had some chronic degenerative things that were probably aggravated.").

Moreover, Reish opined Claimant's Parsonage-Turner syndrome was related to his work injury. *Id.* at 355. He explained: "Just temporally it wasn't there prior to his injury and it is now. . . . Any time you have a nerve neuropraxia or plexopathy, it can be from traction, compression, [or] direct blow, so that could be a contributing factor to the nerve abnormality." *Id.* at 356. He agreed, however, that Parsonage-Turner syndrome can arise without trauma, that "you can't always pinpoint the exact cause of it," and that its etiology "is not known." *Id.* at 390-91. Reish disagreed that the condition had resolved because it no longer appeared on Claimant's EMG. *Id.* at 366-67, 377-78. He noted Claimant still presented with "some ongoing symptoms due to his nerve related problems." *Id.* at 377, 387-89.

Reish further discussed Claimant's right shoulder and biceps. Reish explained that he personally observed a right labral tear while performing surgery on Claimant in April 2015 and opined that the tear related to Claimant's work injury. *Id.* at 334-36. Reish's other postoperative diagnoses included a large retracted supraspinatus

tear and impingement. *Id.* at 332-34. He explained "supraspinatus tear" is a more detailed description of Claimant's rotator cuff tear, which specifies "the exact tendon that was torn." *Id.* Reish opined Claimant's impingement was "likely just a part of the process or a part of the overall injury to the rotator cuff tear."[7] *Id.* Regarding Claimant's biceps, Reish performed an examination in May 2017 and "felt that there was some prominence of the proximal biceps, consistent with a proximal biceps rupture."[8] *Id.* at 360. During an examination in October 2017, Claimant exhibited "pain, swelling, discomfort around the biceps and little deformity." *Id.* at 367-70. Reish "felt the biceps was dropped, compared to the other side. [Claimant's] biceps was cramped . . . And on that day he had a lot of weakness with testing." *Id.* Reish opined this condition was related to Claimant's work injury, describing it as a "biceps pathology that required biceps tenodesis and subsequent biceps rupture." *Id.* at 372-73, 381. Regarding Claimant's "dropped biceps" specifically, he explained: "[Claimant] had that addressed at surgery . . . a tenodesis was performed . . . so that was a continuation of his injury, subsequent treatment, and then now having problems with the biceps postoperatively." *Id.* at 371-72.

**E. The WCJ's Order**

On May 25, 2021, the WCJ entered an order granting Employer's petition to modify Claimant's benefit status from total to partial disability. Moreover, the order granted Claimant's June 25, 2019 review petition in part and denied Claimant's July

---

[7] Reish explained impingement referred to the "process whereby the rotator cuff is impinged upon or mechanically contacted by a part of the bone called the acromion, which is in layman's terms many times associated with what people describe as a bone spur in their shoulder." R.R. at 336.

[8] When asked to define a "proximal biceps rupture," Reish explained: "So there's [sic] two heads to the biceps, and the long head, which is the head you address during a tenodesis procedure, if you have a prominent biceps that has dropped down, then that would indicate that there's some irregularity of that long head of the biceps tendon." R.R. at 361.

15, 2020 review petition in its entirety. The order amended Claimant's work injury to include a right biceps tenodesis but added no other diagnoses. Although the order approved Claimant's contingent fee agreement with his counsel, the WCJ directed that he would bear his own litigation costs.

The WCJ found Claimant credible, accepting his testimony that he continues to experience pain, which increases with activity. *Id.* at 514-15. Nonetheless, the WCJ credited Charczuk's opinions that Claimant had achieved maximum medical improvement by the time of the IRE he conducted, and that Claimant had a whole-person impairment of 4%. *Id.* at 517. The WCJ explained Claimant did not provide evidence of a higher impairment rating or establish Charczuk improperly performed the IRE. *Id.*

Regarding Claimant's additional diagnoses, the WCJ credited Baker's opinion that Claimant's cervical condition was not related to his work injury. *Id.* at 516-17. The WCJ explained Baker's opinion was consistent with the MRIs performed before and after Claimant was injured. *Id.* at 516. The WCJ also credited Baker's opinion that Claimant's Parsonage-Turner syndrome was not related to his work injury. *Id.* at 517. The WCJ accepted Baker's explanation that Parsonage-Turner syndrome can develop without a traumatic incident precipitating it, and that Claimant's EMG showed he had already recovered. *Id.* at 516-17. Although the WCJ credited Baker's opinion that Claimant's work injury included a right shoulder rotator cuff tear and a biceps tenodesis, she did not accept his opinion that Claimant's right labral tear was unrelated to the work injury, explaining Employer acknowledged the labral tear on the NCP. *Id.*

With respect to Reish, the WCJ rejected his opinion that the work injury likely aggravated Claimant's cervical condition. *Id.* at 516. The WCJ explained Reish did

8

not render his opinion within a reasonable degree of medical certainty. *Id.* The WCJ further rejected Reish's opinion that Claimant's Parsonage-Turner syndrome related to his work injury, explaining she found Baker's opinions more persuasive on this issue. *Id.* The WCJ did, however, credit Reish's opinion that Claimant's work injury included a right shoulder labral tear, right shoulder large retracted supraspinatus tear, right shoulder impingement, and biceps pathology that required biceps tenodesis and a subsequent biceps rupture. *Id.* The WCJ explained that Reish's findings during surgery and physical examination of Claimant supported this opinion. *Id.*

The WCJ finally determined that she lacked jurisdiction to address constitutional arguments Claimant raised challenging the IRE process, and that Claimant was not entitled to reimbursement of any litigation costs. *Id.* at 517-19. Addressing litigation costs, the WCJ reasoned Claimant did not prevail on the modification petition or on the primary matters at issue in his review petitions, which were adding the diagnoses of the cervical condition and Parsonage-Turner syndrome to the description of his work injury. *Id.* at 519. "While Claimant did succeed in adding the biceps injury to the diagnosis of the work injury," the WCJ explained, "that issue was not really in dispute as . . . Baker agreed it was part of the work injury." *Id.*

**F. The Board's Order**

Claimant appealed to the Board, which issued an order on December 28, 2021, affirming the WCJ. The Board rejected Claimant's arguments that the WCJ should have amended the description of his work injury to include other diagnoses. *Id.* at 502-03. The Board emphasized its deference to the WCJ's findings with respect to witness credibility and weight of the evidence. *Id.* In addition, the Board explained that the WCJ's credibility determinations and decision to deny Claimant relief did

9

not indicate she failed to make a reasoned decision. *Id.* at 503. The Board explained this Court already rejected the constitutional arguments Claimant raised challenging the IRE process. *Id.* at 503-06 (citing *Pa. AFL-CIO v. Commonwealth*, 219 A.3d 306 (Pa. Cmwlth. 2019); *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021)). The Board concluded by agreeing with the WCJ that Claimant should not receive reimbursement of his litigation costs because the proceeding resulted in no financial benefit to him. *Id.* at 507-08.

Claimant filed a petition for review in this Court. On appeal, Claimant argues that (1) the WCJ should have included additional diagnoses in the description of his work injury and failed to sufficiently explain her reasons for not doing so, (2) he should receive reimbursement for his litigation costs, and (3) the IRE process violated his rights under the Pennsylvania Constitution.

## II. Discussion

On appeal, this Court reviews workers' compensation orders for violations of a petitioner's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the decision. *Id.* Significantly, the WCJ is the factfinder in workers' compensation matters and is entitled to weigh the evidence and assess credibility of witnesses. *Montano v. Advance Stores Co., Inc. (Workers' Comp. Appeal Bd.)*, 278 A.3d 969, 978 n.4 (Pa. Cmwlth. 2022) (quoting *Sharkey v. Workers' Comp. Appeal Bd. (Fed. Express)*, 786 A.2d 1035, 1038 (Pa. Cmwlth. 2001)). We must view the evidence in the light most favorable to the party that prevailed before the WCJ, drawing all reasonable inferences in support of the WCJ's decision. *Id.*

## A. Additional Diagnoses

Initially, Claimant argues[9] the WCJ should have amended the description of his work injury to include additional diagnoses. Claimant's Br. at 6, 29, 40-41. He argues Baker "agreed" to these diagnoses, but that Employer refused to stipulate to them, despite his counsel's repeated requests. *Id.* at 6, 15-16, 29, 38, 41. Claimant maintains adding the diagnoses was "not a matter of a credibility determination" because of Baker's agreement and because the depositions of Charczuk and Reish were not to the contrary. *Id.* at 6, 29, 42. Further, Claimant argues the WCJ did not make a reasoned decision, as she failed to explain why she declined to add the other diagnoses. *Id.* at 29, 36-38, 42. While Claimant sought to add seventeen diagnoses, approximately, in his review petitions, he limits his argument on appeal to only six: impingement, supraspinatus tear, biceps tendon synovitis, intra-articular synovitis, subdeltoid scarring and adhesions, and dropped biceps. *See id.* at 7-8, 24, 28-29, 38, 42-43.

Section 413(a) of the Workers' Compensation Act[10] (Act) directs, in relevant part, that the WCJ may review and modify an NCP, and an original or supplemental agreement, upon proof "that such [NCP] or agreement was in any material respect incorrect." 77 P.S. § 771. Moreover, modification is permissible upon proof that a claimant's disability "increased" or "decreased." 77 P.S. § 772. Section 413(a) thus applies to both corrective amendments addressing "inaccuracy in the identification of an existing injury" and to "amendments addressing subsequently-arising medical

---

[9] Claimant does not divide the argument section of his brief into subsections corresponding to the issues he wishes to raise, but instead blurs his issues together, in violation of our Rules of Appellate Procedure. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein . . . .").

[10] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 771-773.

or psychiatric conditions related to the original injury (or consequential conditions)." *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009) (citation omitted). In either case, the burden rests on the claimant to establish an additional diagnosis. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 375 (Pa. Cmwlth. 2015) (citing *Namani v. Workers' Comp. Appeal Bd. (A. Duie Pyle)*, 32 A.3d 850, 856 n.4 (Pa. Cmwlth. 2011)); *see also Dep't of Pub. Welfare v. Workers' Comp. Appeal Bd. (Kopsie)*, 41 A.3d 53 (Pa. Cmwlth. 2011).

Section 422(a) of the Act provides, pertinently, that "parties to an adjudicatory proceeding are entitled to a reasoned decision . . . which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. Our Supreme Court has held a WCJ's decision is sufficiently "reasoned" under Section 422(a) "if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003).

A review of the evidence indicates the diagnoses Claimant pursues on appeal are either redundant or superfluous when viewed alongside his right rotator cuff tear, labrum tear, and biceps tenodesis. Baker and Reish agreed impingement is not an injury separate from Claimant's rotator cuff tear, with Baker describing it as part of a "spectrum" of rotator cuff disease. R.R. at 258-60, 336. Similarly, Reish explained that "supraspinatus tear" is more specific terminology describing a rotator cuff tear. *Id.* at 332. Regarding Claimant's biceps tendon synovitis, Baker explained: "I think it's indirectly related to the injury and that he had a rotator cuff tear and then . . . and synovitis of the biceps and it can accompany that." *Id.* at 262. He described intra-

12

articular synovitis as "a phenomena of the rotator cuff repair." *Id.* Baker explained Claimant's subdeltoid scarring and adhesions refers to "scarring that developed" in the area because of surgery. *Id.* at 262-63. Finally, Reish associated dropped biceps with Claimant's biceps pathology and tenodesis procedure, describing the condition as "a continuation of his injury[] [and] subsequent treatment." *Id.* at 361, 372-73, 381. Viewing this evidence in the light most favorable to Employer as the prevailing party before the WCJ, *Sharkey*, 786 A.2d at 1038, Claimant failed to establish that his NCP was incorrect "in any material respect," or that his disability increased or decreased, in a way which adding a right biceps tenodesis to the injury description would not address, 77 P.S. §§ 771-772.

We also conclude the WCJ provided a sufficiently "reasoned decision" under Section 422(a). The WCJ supplied findings of fact and credibility determinations with explanations for her determinations. To the extent Claimant believes the WCJ should have addressed his diagnoses more thoroughly, we observe Claimant himself made this burdensome by including a large number of interrelated diagnoses in his review petitions, such as those pertaining to his cervical condition and Parsonage-Turner syndrome. As the WCJ's decision allowed for adequate review by the Board and this Court, the WCJ complied with Section 422(a). *Daniels*, 828 A.2d at 1052. Accordingly, Claimant is not entitled to relief.

**B. Litigation Costs**

Claimant next contends that he should receive reimbursement for his litigation costs because the WCJ found those costs reasonable and appropriate, and because he prevailed in adding a diagnosis of right biceps tenodesis to the description of his

13

work injury.[11]  Claimant's Br. at 6, 29-30, 42-43.  Claimant emphasizes Employer initially denied his right biceps tenodesis was related to the work injury, which meant the diagnosis "remained in dispute," and he had to pursue it through litigation.  *Id.* at 29-30, 41-43.

In relevant part, Section 440(a) of the Act[12] provides that, if an insurer contests liability, a claimant "in whose favor the matter at issue has been finally determined in whole or in part," shall receive "a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings."  77 P.S. § 996(a).  Case law limits Section 440(a)'s applicability, however, to matters in which a claimant obtains a "financial benefit." *Watson v. Workers' Comp. Appeal Bd. (Special People in Ne.)*, 949 A.2d 949, 955-56 (Pa. Cmwlth. 2008) (citing *Amoratis v. Workers' Comp. Appeal Bd. (Carolina Freight Carriers)*, 706 A.2d 368 (Pa. Cmwlth. 1998)).

The claimant in *Watson* argued she was entitled to costs since she prevailed "in establishing her injury as a head concussion as opposed to a head contusion." *Id.* at 955.  We rejected this argument, explaining, among other things, that the claimant had "no neurologic complaints, no positive neurologic findings and no neurologic treatment." *Id.*  Therefore, "there were no special medical expenses attributable to a concussion which would not be incurred for a contusion." *Id.*  We reasoned the claimant "did not prevail on any disputed issue before the WCJ.  Stated otherwise,

---

[11] Claimant further argues he is entitled to litigation costs as he "should have prevailed" in adding the other diagnoses addressed in his previous claim.  Claimant's Br. at 4-6, 30, 42-43.  Because we have concluded Claimant's previous claim is meritless, we need not address this aspect of his argument.

[12] Added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 996(a).

14

the WCJ awarded [the c]laimant no financial benefit beyond the medical expenses [the e]mployer previously agreed to pay." *Id.* at 955-56.

Similarly, in this matter, Claimant's success in adding a right biceps tenodesis to the description of his work injury did not confer any financial benefit. Although the Board expressly raised Claimant's lack of a financial benefit in its opinion, R.R. at 508, he does not articulate any financial benefit in his brief on appeal. Moreover, our review does not suggest adding biceps tenodesis would create a financial benefit. It is important to recognize that Claimant's biceps tenodesis played a relatively small role in these proceedings when considered along with other diagnoses he sought to add, including the cervical condition and Parsonage-Turner syndrome. Accordingly, as Claimant did not prevail in this matter in any meaningful way, he is not entitled to litigation costs.

## C. Constitutionality

Claimant's final contention is that the Act's current IRE provisions violate the Pennsylvania Constitution. Claimant's Br. at 6, 30, 44-48. Specifically, he asserts that the retroactive application of the IRE provisions deprived him of his vested right to continuation of his workers' compensation benefits because it granted Employer credit for time he spent on total disability before enactment of those provisions. *Id.* at 44-48. Claimant asserts this violated our Constitution's Remedies Clause, which provides:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

Pa. Const. art. I, § 11.

15

Claimant's contention stems from our Supreme Court's decision in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017), which invalidated the previous IRE provisions at former Section 306(a.2) of the Act[13] as an unconstitutional delegation of legislative authority. In 2018, the General Assembly responded by passing Act 111, which added the current IRE provisions at Section 306(a.3) of the Act.[14]

After *Protz*, this Court issued decisions addressing Act 111 and upholding the constitutionality of Section 306(a.3). These included *Pierson*, 252 A.3d 1169, which the Board cited in its opinion, where we rejected a similar argument. We concluded that the General Assembly expressly intended employers to receive credit for time a claimant spent on total disability prior to Act 111's enactment. *Id*. at 1179-80. This did not abrogate a claimant's vested rights, as "there are reasonable expectations under the Act that benefits may change" and "claimants . . . did not automatically lose anything by the enactment of Act 111. Act 111 simply provided employers with the means to change a claimant's disability status from total to partial by providing the requisite medical evidence . . . ." *Id.*

Here, Claimant recognizes this Court has already "ruled on the constitutional issues he raised" but explains he presents the issues nonetheless to preserve them in the event the Pennsylvania Supreme Court overrules our precedent. Claimant's Br. at 44. As Claimant acknowledges his claim is meritless under current case law, it must fail.

---

[13] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111).

[14] Added by Act 111, 77 P.S. § 511.3.

### III. Conclusion

For all the foregoing reasons, we conclude Claimant is not entitled to relief, and we affirm the Board's December 28, 2021 order, which affirmed the WCJ.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeffrey Chamberlin,                          :
                              Petitioner     :
          v.                                 :     No.  61 C.D. 2022
                                             :
Commonwealth of Pennsylvania                 :
(Workers' Compensation Appeal Board),        :
                              Respondent      :

# **O R D E R**

**AND NOW**, this 6th day of December, 2022, the December 28, 2021 order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
STACY WALLACE, Judge