# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Johntz,                  :
               Petitioner     :
                                  :
          v.                  : No. 501 C.D. 2022
                                  : Submitted: March 24, 2023
Commonwealth of Pennsylvania     :
(Workers' Compensation Appeal     :
Board),                       :
               Respondent : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                        FILED: September 12, 2023

Susan Johntz (Claimant) petitions for review of the May 11, 2022 order of the Workers' Compensation Appeal Board (Board). The Board affirmed the August 12, 2021 order of the Workers' Compensation Judge (WCJ), which granted Claimant's petition to reinstate her workers' compensation benefits from partial to total disability effective July 16, 2017, granted the Commonwealth of Pennsylvania's (Employer) petition to terminate Claimant's benefits effective July 15, 2019, and dismissed Employer's petition to modify Claimant's benefits to partial disability effective December 26, 2019, as moot. After careful review, we affirm.

## I. Background

Claimant is a psychiatrist who worked at Norristown State Hospital before suffering a work-related injury on August 15, 2013. WCJ Decision (Dec.), 5/11/16, Findings of Fact (F.F.) ¶¶ 1-2. According to Claimant, "she was punched in the face by a patient who had just been released from prison. . . . [H]er head went back and hit the plexiglass at the nurse's station." *Id.* ¶ 5. Employer issued a notice of compensation payable, acknowledging Claimant's injury as a concussion. *Id.* ¶¶ 2-3. Claimant filed a review petition, alleging she suffered injuries in addition to the concussion. *Id.* ¶ 4. On May 11, 2016, the WCJ granted Claimant's petition, amending the notice of compensation payable to include diagnoses of "closed head injury, post concussion syndrome, post traumatic stress disorder [(PTSD)], significant facet mediated neck pain, cervical radiculopathy and neurocognitive deficit." WCJ Order, 5/11/16.

On January 18, 2017, Claimant participated in an impairment rating evaluation (IRE) with Michael A. Kennedy, M.D. (Dr. Kennedy), who concluded she had an impairment rating of less than 50%. Consistent with the law as it existed at the time, Claimant's workers' compensation benefits changed from total to partial disability. Later that year, on June 20, 2017, the Pennsylvania Supreme Court struck down the IRE provisions at former Section 306(a.2) of the Workers' Compensation Act (Act)[1] as an unconstitutional delegation of legislative authority. *See Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827 (Pa. 2017). Claimant filed a reinstatement petition, which the WCJ granted on October 12, 2017, returning her benefits to total disability status.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by Section 4 of the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, repealed by the Act of October 24, 2018, P.L. 714, No. 111 (Act 111).

Employer appealed to the Board. By the time the Board decided Employer's appeal on February 27, 2019, the General Assembly had passed Act 111, implementing new IRE provisions at Section 306(a.3) of the Act.[2] Citing the passage of Act 111, along with developments in case law, the Board vacated the October 12, 2017 order and remanded for the WCJ "to reopen the record and permit the parties to seek appropriate remedies in accordance with the current state of the law." Board Opinion (Bd. Op.), 2/27/19, at 2-4 (discussing *Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018) (*en banc*)).

On August 26, 2019, Employer filed a petition to terminate Claimant's workers' compensation benefits, alleging she was fully recovered from her injury and was able to return to unrestricted work. Employer also filed a review petition on February 14, 2020, alleging Claimant participated in another IRE on December 26, 2019, with Vinit Pande, M.D. (Dr. Pande), who concluded she had an impairment rating of less than 35%. Thus, after remand, the parties presented the WCJ with evidence regarding Claimant's reinstatement petition, Employer's termination petition, and Employer's modification petition. Claimant presented her own deposition and testified at a remote hearing on May 4, 2020. In addition, she presented the depositions of Jeffrey Heebner, D.O. (Dr. Heebner), a physician board certified in family practice, geriatric medicine, and hospice and palliative care medicine; and Ira Brenner, M.D. (Dr. Brenner), a psychiatrist. Employer presented the depositions of I. Howard Levin, M.D. (Dr. Levin), a neurologist; Stephen Mechanick, M.D. (Dr. Mechanick), a psychiatrist; and Dr. Pande.

---

[2] Added by Act 111, 77 P.S. § 511.3.

**A. Claimant's testimony**

Claimant testified she had not worked and had not been capable of working since her injury. Notes of Testimony (N.T.), Claimant Dep., 7/8/19, at 8-9. She explained her ongoing symptoms as follows: "I still have neck pain, head pain, tinnitus in my right ear, I was hit from the right, and I had a broken nose. I have extreme anergia, I have gait problems, I have problems walking, and my short-term memory is immediate and short-term [sic] are really bad." *Id.* at 9. Claimant added that she suffered from "double vision off and on," nightmares, and "ungodly insomnia." *Id.* at 25. She began suffering from depression about two years after her injury, but the depression had improved "recently."[3] *Id.* at 10. Because of these symptoms, Claimant testified it was difficult for her to "even get out of bed," and she would "stay in bed for days." *Id.* at 24. Nonetheless, Claimant acknowledged she was capable of reading, walking, and driving. *Id.* at 28-29. Claimant acknowledged she took vacations and got her "hair done" and "toenails done." *Id.* at 30-31. She maintained her license to practice psychiatry and continued to treat and write prescriptions for one patient, who did not compensate her, "once or twice a year." *Id.* at 13. Claimant recalled that she attended a "cognitive behavior therapy conference" about a year before her deposition, but she was asked to leave because she "must have been inappropriate or something" and "asked too many questions." *Id.* at 34-35.

**B. Dr. Heebner**

Dr. Heebner testified he sees Claimant for treatment "approximately every three to four weeks." N.T., Heebner Dep., 12/13/19, at 6-7. Dr. Heebner did not

---

[3] Claimant described suffering from facial pain during her deposition on July 8, 2019. N.T., Claimant Dep., 7/8/19, at 24. At the hearing on May 4, 2020, Claimant testified she recently began suffering "severe constant face pain, right-sided face pain." N.T., Hearing, 5/4/20, at 16, 23-24.

currently prescribe medications to Claimant but explained his role was to perform a "[p]hysical examination, take a history and physical, listen to her symptomatology, and give he[r] advice as to the management of that symptomatology." *Id.* at 7-8. Dr. Heebner opined Claimant was not fully recovered from her work injury and could not return to her former job without restrictions. *Id.* at 10-11. He explained examinations of Claimant revealed objective findings, which were consistent with her presentation and history. *Id.* at 9. Specifically, Dr. Heebner recalled: "On physical exam there are times when [Claimant] will be unsteady with Romberg Testing when testing for dysmetria, when testing for past-pointing, as well as the amount of discomfort with range of motion and muscle tenderness but particularly in terms of her neurologic presentation." *Id.* Although PTSD and post-concussion syndrome may present few objective findings, Dr. Heebner added, there was "plenty of evidence . . . that there is persistent symptomatology that's affected people's live[s] where they never recoup their preinjury deficits." *Id.* at 12.

## C. Dr. Brenner

Dr. Brenner testified he sees Claimant for treatment about once per month, although "prior to this deposition [he] saw her last week and the week before." N.T., Brenner Dep., 3/18/20, at 6-7. Dr. Brenner did not prescribe Claimant's medications either,[4] instead explaining he focused on forming a "therapeutic alliance" with her. *Id.* at 7-8, 23. Dr. Brenner diagnosed Claimant with complex PTSD as a result of her work injury and a somatic symptom disorder, "which is not work related." *Id.* at 9-10, 16. He opined Claimant was not fully healed and could not return to her

---

[4] Dr. Heebner explained Claimant's "treating psychiatrist" prescribed medications for her, and a neurologist, Stephen Sacks, D.O., had also prescribed medications "at times." N.T., Heebner Dep., 12/13/19, at 8. Dr. Brenner explained another psychiatrist, Alan Gruenberg, M.D., prescribed Claimant's medications. N.T., Brenner Dep., 3/18/20, at 21-24.

5

prior job due to difficulties with cognition. *Id.* at 10. By way of example, he recalled performing an examination on Claimant during which she struggled to draw a clock displaying the time "7:18." *Id.* at 13. Claimant took five minutes to draw the clock and wrote the time incorrectly as "7:13." *Id.* Dr. Brenner opined Claimant would have difficulty ever recovering from her PTSD, explaining she did not have "the inherit resilience left . . . to bounce back," and "the only thing that may help is very intensive therapy 4 to 5 times a week over many years." *Id.* at 11. Dr. Brenner acknowledged he had known Claimant since she was a resident in the 1980s. *Id.* at 19-20.

**D. Dr. Levin**

Dr. Levin explained he reviewed Claimant's medical records and performed an examination on July 15, 2019. N.T., Levin Dep., 1/9/20, at 8, 17. According to Dr. Levin, Claimant's mental status testing indicated her cognitive functioning was "fine," and her neurological exam was "totally normal" other than "some slight difficulty with tandem walking." *Id.* at 17-18. Dr. Levin emphasized what he described as inconsistencies and a lack of findings in Claimant's medical records to support her work-related diagnoses. For example, although Claimant currently alleged being struck on the right side of her face, medical records from shortly after her injury indicated she complained of pain and impaired vision on the left side of her face. *Id.* at 22-24. Dr. Levin opined Claimant was fully recovered from her diagnoses as of the date of his examination. *Id.* at 44-45, 76. He explained, in relevant part:

> I think her clinical course, at the point I saw her, was totally inconsistent with a postconcussion syndrome. And she didn't have any evidence of any actual cognitive impairment. It's clear from reviewing the records that the problems she's experiencing were almost totally psychiatric and emotional in nature.

6

And as far as her neck, there's no objective evidence of any musculoskeletal or neurologic impairment referable to her neck. And no one -- no one, except for maybe [one doctor's] initial note -- actually described any focal neurologic findings on her exam that would suggest she was ever suffering from a cervical radiculopathy or correlate with any changes that were seen on the [electromyography] testing that was performed on her.

*Id.* at 44-45.

**E. Dr. Mechanick**

Similarly, Dr. Mechanick reviewed Claimant's medical records and performed an examination on June 17, 2019. N.T., Mechanick Dep., 1/20/20, at 9, 27. Although Claimant presented with a "somewhat subdued" affect, misstated the date, and was "slightly slow" in performing calculations, Dr. Mechanick discussed her cognitive functioning in positive terms. *Id.* at 26-27. He noted Claimant "described doing extensive reading of books, novels, and professional journals, [which] typically somebody who has such severe impairment wouldn't be able to do." *Id.* at 39. Dr. Mechanick concluded Claimant was likely suffering from a psychological condition unrelated to her work injury. *Id.* at 36-37. He reasoned as follows, in relevant part:

This is a person who claims to have disabling symptoms from a relatively minor workplace incident; and with little improvement or resolution of her symptoms over time, that's just not consistent with a typical concussion or postconcussive syndrome.

When I see symptoms that are so markedly out of magnitude, then what I would expect when don't improve [sic] and when they are accompanied by other symptoms that don't fit the profile, such as her staying in bed so much, I think about some other explanations such as a somatic symptom disorder.

7

*Id.* at 38-39. Dr. Mechanick also observed Claimant did not report any clinically significant symptoms associated with PTSD, such as intrusive thoughts about her work injury or avoidance of activities due to anxiety. *Id.* at 35. Claimant's symptoms were so minor, he explained, it was "difficult for [him] to discern whether those were just essentially within range of normal or at all clinically significant." *Id.* at 35-36. Overall, Dr. Mechanick opined Claimant "doesn't currently have a neurocognitive disorder due to a traumatic brain injury from the August 15, 2013 work incident" and her PTSD symptoms had resolved, such that she no longer required psychiatric treatment or counseling related to the incident. *Id.* at 33. He opined Claimant could return to work without "psychiatric restrictions." *Id.* at 36.

**F. Dr. Pande**

As summarized above, Claimant participated in an IRE with Dr. Pande on December 26, 2019, which included "history taking, physical examination and medical record review." N.T., Pande Dep., 6/2/20, at 17. Dr. Pande testified Claimant did very well on her cognitive examination, scoring 100%. *Id.* at 18. Regarding Claimant's physical examination, Dr. Pande noted about a 50% "loss of range of motion of the neck, turning in both directions" and "mild spasm with tender points" on both sides of the cervical spine. *Id.* at 27. Dr. Pande denied there were any "significant findings" for an ongoing physical disability, however. *Id.* at 29. He explained: "Essentially she had an intact neuro. She may have had complaints with her objective findings. She was fully functional at the time that I saw her." *Id.* Based on these examinations, Dr. Pande concluded Claimant was at maximum

medical improvement with an impairment rating of 29%. *Id.* at 31-34, 39. He agreed Claimant was not fully recovered from her work injuries.[5] *Id.* at 60.

## G. The WCJ's order

The WCJ issued an order on August 12, 2021, granting Claimant's petition for reinstatement. The WCJ found Claimant met her burden of proving continued total disability at the time of Dr. Kennedy's January 18, 2017 IRE and reinstated Claimant's workers' compensation benefits to total disability effective July 16, 2017, the day she filed her petition. WCJ Dec., 8/12/21, F.F. ¶¶ 21-22. In addition, the WCJ granted Employer's termination petition effective July 15, 2019, the day of Dr. Levin's examination, finding Claimant was fully recovered from her work injury. *Id.* ¶ 28. The WCJ dismissed Employer's modification petition as moot, given that she had granted the termination petition. *Id.* ¶ 30.

The WCJ provided extensive findings of fact, explaining she credited the opinions of Drs. Levin and Mechanick. WCJ Dec., 8/12/21, F.F. ¶ 25. Drs. Levin and Mechanick conducted thorough examinations of Claimant and her medical records, the WCJ reasoned, resulting in opinions that were "supported by the objective findings on examination or lack thereof and the lack of traumatic findings on the diagnostic studies." *Id.* ¶ 26. Turning to Claimant, the WCJ rejected her testimony as both internally inconsistent and inconsistent with the "medical records and opinions in this matter." *Id.* ¶ 24. The WCJ rejected the testimony of Drs. Heebner and Brenner as well, explaining they did not appear to be "actually treating Claimant." *Id.* ¶ 27. The WCJ reasoned Claimant treated with other doctors, including Alan Gruenberg, M.D., who prescribed her medications. *Id.* Finally, the

---

[5] All five expert witnesses offered their opinions to a reasonable degree of medical certainty. N.T., Heebner Dep., 12/13/19, at 14; N.T., Brenner Dep., 3/18/20, at 18; N.T., Levin Dep., 1/9/20, at 44; N.T., Mechanick Dep., 1/20/20, at 40; N.T., Pande Dep., 6/2/20, at 43.

WCJ credited Dr. Pande's opinion regarding Claimant's impairment rating, emphasizing it was unrefuted. *Id.* ¶ 29.

**H. The Board's order**

Claimant appealed to the Board, contending substantial competent evidence did not support the WCJ's decision. Claimant argued Drs. Levin and Mechanick provided incompetent testimony because they did not believe she should have ever received her work-related diagnoses. Bd. Op., 5/11/22, at 9, 13. Further, Claimant argued the WCJ credited Dr. Pande, who opined she was not fully recovered. *Id.* at 14-16. Dr. Pande's opinion, according to Claimant, negated the WCJ's reasons for granting the termination petition. *Id.*

The Board affirmed the WCJ's decision on May 11, 2022. It emphasized the WCJ was the ultimate fact-finder in the case, who was entitled to make credibility determinations and weigh the evidence. Bd. Op., 5/11/22, at 3-14. The Board summarized the testimony of Drs. Levin and Mechanick, explaining their opinions related to Claimant's present condition rather than her condition at the time of the work injury. *Id.* The Board recognized that the WCJ credited the testimony of Dr. Pande. *Id.* at 14-16. It explained this credibility determination did not prevent the WCJ from finding Claimant was fully recovered, however, because the purpose of an IRE is to establish impairment, not to assess whether a claimant can perform his or her pre-injury job. *Id.* (citing *Weismantle v. Workers' Comp. Appeal Bd. (Lucent Techs.)*, 926 A.2d 1236 (Pa. Cmwlth. 2007)).

Claimant filed a petition for review in this Court and now presents essentially the same arguments she presented to the Board. Claimant challenges the opinions of Drs. Levin and Mechanick, and she argues Dr. Pande's testimony was inconsistent with the WCJ's finding of full recovery. *See* Claimant's Br. at 8-16.

10

## II. Discussion

This Court reviews workers' compensation orders for violations of the petitioner's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the decision. *Id.* Significantly, the WCJ is the fact-finder in workers' compensation cases and is entitled to weigh the evidence and assess credibility of witnesses. *Montano v. Advance Stores Co., Inc. (Workers' Comp. Appeal Bd.)*, 278 A.3d 969, 978 n.4 (Pa. Cmwlth. 2022) (citing *Sharkey v. Workers' Comp. Appeal Bd. (Fed. Express)*, 786 A.2d 1035, 1038 (Pa. Cmwlth. 2001)). We must view the evidence in the light most favorable to the party that prevailed before the WCJ, drawing all reasonable inferences in support of the WCJ's decision. *Id.*

Section 413(a) of the Act provides, in relevant part, that a WCJ may terminate a notice of compensation payable upon proof that the claimant's disability has "temporarily or finally ceased." 77 P.S. § 772. "To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased, or any remaining conditions are unrelated to the work injury." *Baumann v. Workers' Comp. Appeal Bd. (Kellogg Co.)*, 147 A.3d 1283, 1289 (Pa. Cmwlth. 2016) (quoting *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008)) (emphasis omitted). "An employer meets its burden of proof when its medical expert testifies, to a reasonable degree of medical certainty, that the claimant is fully recovered and that there are no objective findings to substantiate any ongoing symptoms related to the work injury." *Ciarolla v. Workers' Comp. Appeal Bd. (Astrazeneca Pharms. LP)*, 239 A.3d 204,

209 (Pa. Cmwlth. 2020) (citing *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290 (Pa. 1997)).

Here, our review of the record supports the WCJ's decision. Drs. Levin and Mechanick testified, to a reasonable degree of medical certainty, that Claimant was not suffering from her work-related diagnoses at the times they examined her. N.T., Levin Dep., 1/9/20, at 44-45; N.T., Mechanick Dep., 1/20/20, at 35-40. Their examinations of Claimant revealed no significant cognitive or neurological problems and no clinically significant symptoms of PTSD. N.T., Levin Dep., 1/9/20, at 17-18; N.T., Mechanick Dep., 1/20/20, at 35-36. Dr. Levin opined Claimant's symptoms "were almost totally psychiatric and emotional in nature," N.T., Levin Dep., 1/9/20, at 44, while Dr. Mechanick proposed Claimant was suffering from a somatic symptom disorder. Mechanick Dep., 1/20/20, at 39. Notably, Dr. Mechanick's proposal was consistent with the testimony of Claimant's own witness, Dr. Brenner, who believed she had the same condition. N.T., Brenner Dep., 3/18/20, at 16-17.

Claimant attempts to undermine the opinions of Drs. Levin and Mechanick by taking portions of their testimony out of context. Claimant points to Dr. Levin's testimony that she had "slight difficulty with tandem walking" and Dr. Mechanick's testimony that she had a somewhat "subdued" affect, misstated the date, and was slightly slow in performing calculations. Claimant's Br. at 10-12 (citing N.T., Levin Dep., 1/9/20, at 17; N.T., Mechanick Dep., 1/20/20, at 26-28). According to Claimant, she cannot perform her pre-injury job "dealing directly with mentally disturbed individuals coming . . . from the prison system" if she has trouble walking or lacks mental acuity. *Id.* Claimant essentially asks this Court to reweigh the evidence in her favor, which we cannot do. *See Montano*, 278 A.3d at 978 n.4.

12

In addition, Claimant argues Drs. Levin and Mechanick did not believe she should have ever received her work-related diagnoses. Claimant's Br. at 11-13. Because Drs. Levin and Mechanick did not assume the validity of her diagnoses, Claimant argues, their opinions could not support the conclusion that she was fully recovered. *Id.* Even if an expert does not believe a work injury occurred, testimony that the claimant is fully recovered from any injury he or she might have sustained will be sufficient to support a termination petition. *See Jackson v. Workers' Comp. Appeal Bd. (Res. for Hum. Dev.)*, 877 A.2d 498, 502-03 (Pa. Cmwlth. 2005) (citing *To v. Workers' Comp. Appeal Bd. (Insaco, Inc.)*, 819 A.2d 1222 (Pa. Cmwlth. 2003)). Once again, Drs. Levin and Mechanick opined Claimant was fully recovered from her diagnoses at the times they examined her in 2019. N.T., Levin Dep., 1/9/20, at 76; N.T., Mechanick Dep., 1/20/20, at 58. Their testimony therefore supported the WCJ's findings and conclusions.

Claimant finally emphasizes that the WCJ credited Dr. Pande, who opined she was not fully recovered. Claimant's Br. at 13-15. Claimant attempts to distinguish this case from *Weismantle*, which the Board cited for the proposition that the WCJ could credit Dr. Pande while also granting Employer's termination petition. *Id.* at 14. In *Weismantle*, the employer filed a termination petition based on a doctor's report indicating the claimant was fully recovered. 926 A.2d at 1237. The claimant subsequently participated in an IRE with a different doctor, resulting in an impairment rating of 10%. *Id.* at 1237-38. This Court held the IRE did not preclude the employer from seeking termination. *Id.* at 1238-40. We explained, among other things, that an IRE impairment rating is distinct from a determination regarding the claimant's degree of disability. *Id.* at 1240. IREs determine impairment, which may

13

or may not affect a person's earning power, while termination petitions focus on earning power, i.e., whether a claimant can perform his or her pre-injury job. *Id.*

Although Dr. Pande agreed during his testimony that Claimant was not fully recovered, the WCJ did not credit that statement specifically. The WCJ found Dr. Pande credible regarding Claimant's impairment rating. WCJ Dec., 8/12/21, F.F. ¶¶ 29-30. Moreover, although Claimant is correct that the circumstances of *Weismantle* are somewhat different from the circumstances here, its analysis of the distinction between impairment and disability remains instructive. Our Supreme Court has more recently noted the same distinction. *See Dana Holding Corp. v. Workers' Comp. Appeal Bd. (Smuck)*, 232 A.3d 629, 631 (Pa. 2020) (under former Section 306(a.2) of the Act, "'[i]mpairment' . . . connoted an anatomic or functional abnormality or loss resulting from a compensable injury that was reasonably presumed to be permanent, as distinguished from 'disability,' which more directly concerns the loss of earnings capacity") (citation and footnote omitted). For this reason, it was not impermissible for the WCJ to find Dr. Pande credible regarding Claimant's impairment rating while also crediting the opinions of Drs. Levin and Mechanick that Claimant was fully recovered.

### III. Conclusion

Accordingly, we conclude Claimant is not entitled to relief, and we affirm the Board's May 11, 2022 order, which affirmed the WCJ.

_____
STACY WALLACE, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Johntz,                          :
                          Petitioner  :
                                       :
         v.                            : No.  501 C.D. 2022
                                       :
Commonwealth of Pennsylvania           :
(Workers' Compensation Appeal          :
Board),                                :
                          Respondent  :

# **O R D E R**

**AND NOW**, this 12th day of September 2023, the May 11, 2022 order of the Workers' Compensation Appeal Board is **AFFIRMED**.


                                    _____
                                    STACY WALLACE, Judge